UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, <br> *Plaintiff*, <br><br> vs. <br><br> PV ROOFING CORP., *ET AL.*, <br> *Defendants*. | § § § § § § § § | CIVIL ACTION H-08-3583 |

## AMENDED SUMMARY JUDGMENT OPINION AND ORDER

This insurance coverage dispute brought pursuant to the Federal Declaratory Judgment Act is before the court on plaintiff Atlantic Casualty's motion for summary judgment (Dkt. 80), and defendant Horatio Gonzalez's motion for summary judgment (Dkt. 81).[1] The court concludes that plaintiff's motion should be granted, and defendant's motion should be denied.

### Background Facts

Plaintiff seeks a declaration that it has no duty to defend or indemnify its insured, defendant PV Roofing Corp., in a lawsuit filed in Texas state court by defendant Horatio Gonzalez.[2] In the underlying lawsuit, Gonzalez alleges that he suffered the loss of his hands and feet when he was electrocuted at a job site in Houston.

The following facts are undisputed for purposes of this motion. PV Roofing was the roofing contractor on the job site. PV Roofing hired an independent contractor, Bernardo

---

[1] Atlantic moves for summary judgment against Gonzalez and PV Roofing Corp. PV Roofing has not joined in Gonzalez's motion for summary judgment.

[2] *Gonzalez v. PV Roofing Corp.*, cause number 2008-07134, in the 61st Judicial District of Harris County, Texas (underlying lawsuit).

Mejia, to complete the roofing job. On the day of the incident, Mejia went to the job site to do a final inspection. He took Gonzalez with him. Gonzalez was injured when an aluminum ladder he was moving hit a high voltage power line. Neither PV Roofing nor Mejia paid Gonzalez for any services in connection with the roofing job.

Atlantic Casualty issued a commercial general liability policy to PV Roofing.[3] There is no dispute that Gonzalez suffered bodily injury caused by an occurrence that took place within the coverage territory and within the policy period. Atlantic Casualty contends that the policy does not cover liability for Gonzalez's injuries pursuant to 3 policy exclusions: (1) the exclusion for injury to employees, contractors and employees of contractors (Ex. 1, at 50); (2) the exclusion of claims "arising out of" actions or inactions by an independent contractor or subcontractor (Ex. 1, at 47); and (3) the products-complete operations hazard exclusion (Ex. 1, at 23, 29). Further, Atlantic Casualty argues that if the court determines fact issues exist that preclude summary judgment, it is entitled to re-litigate those facts in this court and is not bound by collateral estoppel to any rulings in the underlying state court lawsuit.[4]

---

[3] Atlantic Casualty's motion, Exhibit 1 (Dkt. 80-1) (policy).

[4] Atlantic Casualty also contends that coverage for punitive damages is excluded under the policy. Neither Gonzalez nor PV Roofing contests that contention. Atlantic Casualty is entitled to declaratory judgment that it has no duty to indemnify PV Roofing for any punitive damages award. Atlantic Casualty has withdrawn reliance on the Roofing Limitation endorsement, and the court does not address it. *See* Atlantic Casualty's response (Dkt. 86), at 24.

Gonzalez denies that he was working for PV Roofing as an employee, sub-contractor, or volunteer at the time he was injured, or that he otherwise comes within the scope of the above exclusions.

## Summary Judgment Standards

To obtain summary judgment, defendants bear the burden of demonstrating that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and therefore judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c). The court will enter summary judgment if, after having adequate time for discovery, plaintiffs have produced no evidence to support one or more of the essential elements of their claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Conversely, where defendants have the burden of proof, they must establish, as a matter of law, every essential element of their defense before plaintiffs can be obligated to produce specific facts rebutting defendants' case. *Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In determining the existence of a genuine issue of material fact, the court will draw all inferences arising from the facts in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 817 (5th Cir. 2002).

## Insurance Coverage Standards

An insurer assumes two distinct duties under a typical commercial general liability policy: the duty to indemnify and the duty to defend. *Trinity Univ. Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010). An insurer must defend its insured if a

3

plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured. *Id.* (citing *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008)). In determining the duty to defend, Texas follows the "eight-corners rule" under which the court considered the allegations in the pleadings and the policy provisions, without regard to whether the allegations are true. *Id.*; *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599-600 (5th Cir. 2006).

The general rule is that where the complaint does not state sufficient facts to clearly determine coverage, the duty to defend exists "if there is, potentially, a case under the complaint within the coverage of the policy." *Zurich*, 268 S.W.3d at 491. However, where the petition does not contain sufficient facts even to determine whether coverage potentially exists, the court may look to extrinsic evidence. *W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 313 (5th Cir. 1993); *Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418, 421 (Tex. App. – Waco 2000, pet. denied). This exception is limited to situations in which the extrinsic evidence goes solely to the coverage issue and does not overlap with the merits or engage the truth of the facts alleged in the underlying lawsuit. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004).

Where the insurer relies on policy exclusions, the insurer bears the burden of proving that the exclusions apply. Exclusions are narrowly construed, and all reasonable inferences are drawn in the insured's favor. *Nautilus Ins. Co. v. Country Oaks Apts. Ltd.*, 566 F.3d 452, 454-55 (5th Cir. 2009). Insurance policies, including exclusions, are construed under the

same rules applicable to contracts generally. The court must give effect to the plain meaning of the contract. If the policy language is susceptible of two or more reasonable interpretations, then it is ambiguous. In that case, the court adopts the meaning favored by the insured. *Id.*; *Utica Nat'l Ins. Co. v. American Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004).

The duty to defend is broader than the duty to indemnify; an insurer may have an obligation to defend but eventually no obligation to indemnify. *Zurich*, 268 S.W.3d at 490-91. As a corollary, where there is no duty to defend, there is no duty to indemnify. *Utica Nat'l Ins. Co.*, 141 S.W.3d at 201.

## **Analysis**

Gonzalez's fourth amended petition, the operative pleading in his state court lawsuit against PV Roofing, alleges that he was not an employee of PV Roofing, but was injured "while at a home in Houston, Texas."[5] The third amended petition contains no facts

---

[5] Gonzalez's initial petition alleged that he was an employee of PV Roofing and was injured while doing his job. His first amended petition alleged he was injured "while working at a home in Houston, Texas." In November 2008 Gonzalez filed a second amended petition eliminating any reference to working. Atlantic Casualty declined to defend based on the initial petition, and PV Roofing did not request defense after the first amendment. Upon presentation by PV Roofing of the second amended petition, Atlantic Casualty offered a complete defense under reservation of rights. PV Roofing declined the offer of defense without explanation in January 2009. Gonzalez filed a third amended petition in July 2009, expressly alleging that he was not an employee of PV Roofing when he was injured while at a home in Houston, Texas. At this point, PV Roofing changed its mind and accepted Atlantic Casualty's offer of defense under reservation of rights. Finally, Gonzalez filed a fourth amended complaint again alleging that he was not an employee of PV Roofing when he was injured while at a home in Houston, Texas. Gonzalez and PV Roofing do not contest that Atlantic Casualty properly denied coverage based on the original pleading, and that Atlantic Casualty has properly reserved its rights. Gonzalez's response (DKt. 85), at n.1; Atlantic Casualty's reply (Dkt. 89), at 3-4. The court makes no inference as to the truth or

5

describing what Gonzalez was actually doing when he was injured, or the nature of his relationship with PV Roofing or Bernardo Mejia. Gonzalez's pleading is so bare-bones that the court cannot make a decision as to coverage from the eight corners of the policy and his operative pleading. Thus, the court must look to limited extrinsic evidence to determine whether a duty to defend exists.

The "Injury to Employees" exclusion provides in relevant part:

This insurance does not apply to:

>   (i)   "bodily injury" to any "employee" of any insured arising out of or in the course of:
>
>   >   (a)   Employment by any insured; or
>   >
>   >   (b)   Performing duties related to the conduct of any insured's business;
>
>   (ii)   "bodily injury" to any "contractor" arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such "contractor" for which any insured may become liable in any capacity; or
>
>   (iii)   "bodily injury" sustained by the spouse, child, parent, brother, or sister of any "employee" of any insured, or of a "contractor", as a consequence of any injury to any person as set forth in paragraphs (i) and (ii) of this endorsement.

                        \*   \*   \*

With respect to this endorsement only, the definition of "Employee" in the DEFINITIONS (Section V) of CG001 is replaced by the following:

>   "Employee" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing

---

falsity of Gonzalez's allegations due to his serial amendments of the state court petition.

6

services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

As used in this endorsement, "contractor" shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, any property owner, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein.[6]

On this summary judgment record, the uncontroverted facts are that Gonzalez went with Mejia to the job site on the day of the accident. Gonzalez and Mejia were the only persons at the job site. While Mejia was performing his final inspection, Mejia noticed that some shingles needed repair. Mejia climbed a ladder and made one repair. He needed to move the ladder to make another repair. Mejia asked Gonzalez to move the ladder. Gonzalez was injured when the ladder he was holding came in contact with high voltage power lines.[7] As explained below, these facts are sufficient to bring Gonzalez within the very broad definition of "employee" contained in the relevant policy exclusion.[8]

The employee exclusion is not ambiguous, and it is very broad. It excludes from coverage all persons "providing services" on behalf of the insured. Contrary to Gonzalez's assertions, the phrase "providing services" does not necessarily imply a formal relationship, a contract, or payment. Gonzalez's analogy of his status to a pizza delivery man or a helpful

---

[6] Endorsement to Policy (Dkt. 80-1, at 50).

[7] Atlantic's Exhibit 13, Gonzalez Dep., at 19-24; Exhibit 14, Mejia Dep., at 14-16, 40-41, 44-45, 48-50.

[8] Thus, the court need not address whether Atlantic Casualty would be bound by any factual findings in the state court lawsuit.

stranger are not apropos. Mejia took Gonzalez to the job site. It is undisputed that at the time he was injured he was moving a ladder to assist Mejia in repairing the roof. He was not a mere bystander. The policy makes no exception for *de minimis* services.

Gonzalez argues that to the extent he was providing a service, it was a service to Mejia only and not the insured, and thus he was not "volunteering for the purpose of providing services to or on behalf of any insured." The court is not persuaded. PV Roofing was the contractor on the project. Mejia was PV Roofing's subcontractor. Any service provided to Mejia on the job was necessarily also provided on behalf of PV Roofing. A subcontractor may pay full-time employees, barter, or recruit unpaid relatives to assist him in getting a job done. There is nothing in the policy indicating that the insured's coverage for job-site injuries varies depending on the type of relationship the subcontractor has with the injured party.

Based on the policy exclusion for Injury to Employees, Contractors, and Employees of Contractors, the court concludes that Atlantic Casualty has no duty to defend PV Roofing in the underlying lawsuit or to indemnify PV Roofing for any liability established therein. Because the court concludes that the "Exclusion of Injury to Employees, Contractors, and Employees of Contractors" is dispositive of this case, it does not address the other exclusions relied upon by Atlantic Casualty.

**Conclusion and Order**

Atlantic Casualty's motion for summary judgment (Dkt. 80) is granted. Gonzalez's motion for summary judgment (Dkt. 81) is denied.

The court will issue a separate final declaratory judgment.

Signed at Houston, Texas on May 20, 2010.

*Stephen Wm. Smith*
Stephen Wm. Smith
United States Magistrate Judge